[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2002
THOMAS K. KAHN
CLERK

_____

No. 99-4176

_____

D. C. Docket No. 97-08794 CV-WDF

SCOTT LEIGH DREW,

Petitioner-Appellant,

versus

DEPARTMENT OF CORRECTIONS,
MICHAEL W. MOORE,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 18, 2002)**

Before BARKETT and MARCUS, Circuit Judges, and O'KELLEY*, District Judge.

MARCUS, Circuit Judge:

Petitioner Scott Leigh Drew, a Florida inmate, appeals a decision of the

district court dismissing as time-barred his petition for a writ of habeas corpus

_____

*Honorable William C. O'Kelley, U.S. District Judge for the Northern
District of Georgia, sitting by designation.

pursuant to 28 U.S.C. § 2254. Drew argues first that his petition was not time-barred under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), 28 U.S.C. § 2241, et seq., because the statutory period should have been tolled during the pendency of his third motion for post-conviction relief in the state court. In the alternative, he asserts that any time bar should have been disregarded under the doctrine of equitable tolling. We are persuaded by neither argument and accordingly we affirm the judgment of the district court.

## I.

A detailed statement of the complex procedural history of this case is essential to its resolution. On September 29, 1987, a jury in Palm Beach County convicted Drew of first degree felony murder and armed burglary stemming from the shooting death of his ex-wife six days after their divorce became final in September 1986. Following the conviction, Drew was sentenced to life imprisonment for the murder conviction as well as a concurrent term of twenty years for the burglary. Alleging that the trial court erred in excluding important psychiatric testimony, Drew appealed his conviction. The Fourth District Court of Appeal rejected his claim and affirmed the conviction on October 11, 1989. See Drew v. State, 551 So. 2d 563 (Fla. Dist. Ct. App. 1989).

With his direct appeal complete, Drew embarked on an effort to obtain collateral relief that has lasted for more than a decade. On March 28, 1990, he filed his first motion for post-conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure. The motion raised only one issue, namely that Drew was deprived of an impartial jury drawn from a cross-section of the community. The trial court and the Fourth District both denied relief.

After the first motion was denied, Drew filed a second motion under Rule 3.850 on October 14, 1992. This time, he raised five issues, including three claims about the use of a taped confession as well as claims of prosecutorial misconduct and ineffective assistance of counsel. The trial court immediately rejected the motion as unclear, unspecific, and convoluted, and the Fourth District affirmed again on January 6, 1993. Next, on August 6, 1993, Drew filed a state court petition for a writ of habeas corpus on the ground that his appellate counsel had performed ineffectively. The Fourth District denied the petition on September 1, 1993.

Drew then brought his post-conviction challenge to federal court for the first time, filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 16, 1994. The petition raised the five issues presented previously in the second Rule 3.850 motion, as well as the claim of ineffective assistance of

3

appellate counsel and a new allegation that the jury before which he was tried did not represent a fair cross-section of the community. The magistrate judge recommended that the case be dismissed as unexhausted because six of the seven claims had not been adequately presented to the state court. Although the magistrate judge recognized that these claims could possibly be considered procedurally barred from federal habeas review due to Drew's failure to raise them in his first post-conviction challenge, she recommended dismissal without prejudice after the state itself suggested that such a remedy was appropriate. The magistrate judge did note, however, that the claims might in fact be time-barred: "Although a Rule 3.850 motion may now be time barred, under the unusual circumstances of this case the State courts might not apply their procedural bar." The district court adopted the magistrate judge's Report and Recommendation and dismissed Drew's petition without prejudice in an order on March 28, 1995.

What happened next is relevant to the equitable tolling claim in this case. Drew asserts that he did not receive a copy of the district court's dismissal order until February 20, 1996, almost a year after it was issued. He says that he sent various letters to the Clerk of the Court for the Southern District of Florida inquiring about the status of his petition, but that he received no response. Finally, on January 24, 1996, the Clerk's office sent Drew a docket report indicating that

4

the petition had been dismissed in March 1995. In response, Drew states that he again sent letters to the Clerk asking for a copy of the order, but he claims that his letters were ignored. Eventually, Drew wrote directly to Judge King, the district court judge, who sent a copy of the order on February 20, 1996.

Drew alleges that he began working on a third Rule 3.850 motion as soon as he received the district court order dismissing his habeas petition and calling for state court exhaustion. After sending a draft to his aunt in Texas for typing and organization, Drew filed his third motion on April 23, 1996. The motion raised the five contentions included in the previous 3.850 motion. The state argued that the claims were procedurally barred because the motion was untimely under the two-year statute of limitations prescribed by Rule 3.850(b) and because the motion was successive under Rule 3.850(f). On August 25, 1996, the trial judge rejected the motion for the reasons set forth in the state's brief. The Fourth District affirmed the denial on July 18, 1997.

On October 9, 1997, Drew filed the instant petition, which raised the same seven claims presented in his first federal habeas effort. On December 23, 1998, the magistrate judge recommended that the petition be dismissed as untimely under the AEDPA's one-year statute of limitations. While it was clear that the petition was not filed before the April 23, 1997 deadline that applied to all individuals

5

convicted before April 24, 1996, see Hurley v. Moore, 233 F.3d 1295, 1296 (11th Cir. 2000), the court confronted the question of whether the limitations period should have been tolled for the period during which the third 3.850 motion was pending in the state court. As the federal habeas corpus statute explains, the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The magistrate judge held that tolling was not in order because Drew's state court motion had not been "properly filed" since it was deemed procedurally barred as untimely and successive under Florida law. The Report and Recommendation went on to explain that, in some cases, a petitioner in Drew's situation might be entitled to equitable tolling of the statute of limitations since the first petition was expressly dismissed without prejudice with instructions to exhaust in state court. However, the magistrate judge stated that such equitable relief was not appropriate in this case since Drew had allowed more than a year to elapse after the issuance of the district court's dismissal order before he filed his third 3.850 motion. The Report and Recommendation noted that excusing Drew's delay would contravene the AEDPA's goal of "curtailing just such dilatory practices."

6

Drew objected to the magistrate judge's Report and Recommendation on December 31, 1998, arguing that his delay in filing the third 3.850 motion was justified because he did not receive the district court's dismissal order until February 1996. Drew also argued that the AEDPA limitations period should have been tolled because the third 3.850 motion was "properly filed" as it complied with state procedural rules governing filing. The district court adopted the magistrate judge's Report and Recommendation on January 6, 1999, dismissing the petition as untimely pursuant to 28 U.S.C. § 2244(d).

## II.

Drew advances two reasons why the district court erred in dismissing his petition. Initially, he claims that the AEDPA statute of limitations should have been tolled for the time during which his third 3.850 motion was pending in the state court. In the alternative, he says that he is entitled to equitable tolling because the delay in filing resulted from state court proceedings required by the order dismissing his first habeas corpus petition without prejudice.

We review de novo a district court's decision to dismiss a petition for a writ of habeas corpus. See Delancy v. Florida Dep't of Corrs., 246 F.3d 1328, 1329 (11th Cir. 2001). We also review a district court's legal decision on equitable tolling de novo. See Helton v. Sec'y for Dep't of Corrs., 259 F.3d 1310, 1312 (11th

7

Cir. 2001). However, the district court's determinations of the relevant facts will be reversed only if clearly erroneous. See Dorsey v. Chapman, 262 F.3d 1181, 1185 (11th Cir. 2001). This standard requires us to affirm a district court's findings of fact unless "the record lacks substantial evidence" to support that determination. Lightning v. Roadway Express, Inc., 60 F.3d 1551, 1558 (11th Cir. 1995). We have squarely held that a determination regarding a party's diligence is a finding of fact that "will not be disturbed unless clearly erroneous." Walters v. City of Atlanta, 803 F.2d 1135, 1145 (11th Cir. 1986). Finally, we review a trial court's decision whether to conduct an evidentiary hearing on an equitable tolling claim for an abuse of discretion. See Fisher v. Gibson, 262 F.3d 1135, 1145 (10th Cir. 2001); Brown v. Jones, 255 F.3d 1273, 1277 n.4 (11th Cir. 2001).

## A.

The AEDPA imposes a one-year statute of limitations on all habeas corpus petitions. See 28 U.S.C. § 2244(d)(1). This rule "serves the well-recognized interest in the finality of state court judgments" and "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." Duncan v. Walker, 533 U.S. 167, 179, 121 S. Ct. 2120, 2128, 150 L. Ed. 2d 251 (2001). For individuals convicted prior to the enactment of the AEDPA, the statute of limitations began to

8

run on the law's effective date of April 24, 1996. See, e.g., Hurley, 233 F.3d at 1296. For people in Drew's position, therefore, federal habeas petitions ordinarily had to be filed by April 23, 1997 in order to be considered timely. However, the federal habeas statute tolls the limitations period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Drew does not dispute that his petition would be time-barred in the absence of tolling. Instead, he asserts that the limitations period should have been tolled for the period from April 23, 1996 to July 18, 1997 because his third 3.850 motion was "properly filed" and "pending" in the state court at that time. Respondent counters that Drew's motion was not "properly filed," and thus not entitled to tolling, because it was deemed untimely and successive by the state court.

The Supreme Court recently analyzed the significance of Section 2244(d)(2)'s "properly filed" requirement in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000). The Court explained that "[a]n application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Id. at 8, 121 S. Ct. at 363. The opinion went on to hold that

> an application is "properly filed" when its delivery and acceptance are
> in compliance with the applicable laws and rules governing filings.

9

These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Id., 121 S. Ct. at 364 (emphasis in original) (footnote omitted).

Drew does not dispute the state court's determination that his third Rule 3.850 motion was a successive petition.[1] Under Artuz, however, the fact that a motion is successive does not render it improperly filed. Before the Supreme Court explained the meaning of "properly filed," this Court had held that the AEDPA statute of limitations should not be tolled during the pendency of a state post-conviction petition that was later deemed successive by the state court. See Weekley v. Moore, 204 F.3d 1083 (11th Cir. 2000). After issuing Artuz, the Supreme Court vacated Weekley for further consideration, and on remand a panel of this Court revised its earlier decision. Holding that the successive nature of a petition does not prevent it from being properly filed, this Court explained that "the question of whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and

---

[1]Rule 3.850 establishes that "[a] second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules." Fla. R. Crim. P. 3.850(f).

10

free of procedural bar." <u>Weekley v. Moore</u>, 244 F.3d 874, 876 (11th Cir. 2001) (quoting <u>Artuz</u>, 531 U.S. at 9, 121 S. Ct. at 364). Quite simply, the fact that a petition is successive does not mean that its delivery and acceptance failed to comply with applicable rules governing such matters as form, time limit, delivery location, and fees. <u>See</u> <u>Artuz</u>, 531 U.S. at 8, 121 S. Ct. at 364. A successive petition can thus toll the statute of limitations. <u>See</u> <u>Delancy</u>, 246 F.3d at 1330 n.2 (noting under <u>Weekley</u> and <u>Artuz</u> that a "successive state court post-conviction motion constitutes a 'properly filed' petition for purposes of tolling AEDPA's statute of limitations period").

If the successive nature of the third 3.850 motion had been its only flaw, Drew would have been entitled to tolling. Unfortunately for his case, however, the petition was also untimely. As with the rule governing successive petitions, the statute of limitations for Florida post-conviction motions is set forth in Rule 3.850:

> A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final in a noncapital case or more than 1 year after the judgment and sentence become final in a capital case in which a death sentence has been imposed unless it alleges that
> (1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or
> (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively, or

11

(3) the defendant retained counsel to timely file a 3.850 motion and counsel, through neglect, failed to file the motion.

Fla. R. Crim. P. 3.850(b).

In this case, there is no doubt that Drew filed his third Rule 3.850 motion well over two years after his conviction became final. Prior to Artuz, this Court held in Webster v. Moore, 199 F.3d 1256 (11th Cir. 2000), that claims considered procedurally barred under state law for reasons such as untimeliness were not properly filed and could therefore not toll the AEDPA statute of limitations. Webster remains valid today. According to Artuz, a petition is not "properly filed" if it is not filed in compliance with "the time limits upon its delivery." 531 U.S. at 8, 121 S. Ct. at 364. In a footnote, the Supreme Court explicitly left open "the question whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." Id. at 9 n.2, 121 S. Ct. at 364 n.2 (citing Smith v. Ward, 209 F.3d 383, 385 (5th Cir. 2000)).

We addressed the question of exceptions in Delancy, and held that an untimely Rule 3.850 motion would be deemed properly filed if it alleged facts that would merit an exception from the timely filing requirement. In that case, the district court had dismissed Delancy's habeas corpus petition as untimely under the AEDPA. The petitioner argued that the statute of limitations should have been tolled because he had a 3.850 motion pending in the state court during the

12

limitations period. Even though the 3.850 motion had not been filed within the two year period established by Rule 3.850(b), we explained that the 3.850 petition was not "improperly filed" since it alleged facts that would entitle the petitioner to an exception under the Florida statute:

> Under Artuz, an application is "properly filed" when its delivery and acceptance "are in compliance with the applicable laws and rules governing filings." Because Rule 3.850 requires only that the motion allege that facts "were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence" we find that if Delancy's Rule 3.850 motion in fact alleges "newly discovered evidence," it was "properly filed."

246 F.3d at 1331 (citations omitted).

Pursuant to Delancy, Drew's third 3.850 motion would have been properly filed despite its untimeliness if it had alleged facts that would trigger any of the three exceptions set forth in the Florida statute: (1) the facts on which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained with due diligence; (2) the fundamental constitutional right asserted was not established during the period provided and has since been deemed retroactive; or (3) the petitioner retained counsel to file a timely 3.850 motion and counsel, through neglect, failed to do so. See Fla R. Crim. P. 3.850(b). Even with the liberal reading appropriate for pro se pleadings, see Holsomback v. White, 133

13

F.3d 1382, 1386 (11th Cir. 1998), nothing in Drew's third 3.850 motion can be interpreted to allege that any of the exceptions apply.

Drew's third 3.850 motion did not allege that the facts on which it was based were previously unknown and unascertainable through due diligence. In relation to his claim that the conviction was obtained with tampered evidence, Drew unambiguously said in the motion that he

> knew this evidence had been tampered with by the State, and had caught their deed way before trial began, but never had a chance to prove it back then. However, at this point in time, beyond a shadow of a doubt, Defendant can prove the State tampered with his taped confession and the transcripts of said statement too.

Rule 3.850 Motion, Apr. 23, 1996, at 6. Later, in response to the 3.850 motion sheet's question about why some claims had not been raised earlier, Drew stated that, "[a]lthough none of the grounds were presented on Direct Appeal, Defendant's Appellate Counsel was aware of them all thru [sic] phone calls and letters from the Defendant." Id. at 7. As these statements acknowledge, Drew has long known the facts underlying his claims. He admits that he knew the facts surrounding the evidence tampering claim even before his trial and that he knew of the other facts by the time of his direct appeal. That he was not necessarily able to prove all of the alleged violations at that time does not excuse his late filing. Rule 3.850(b)(1) clearly states that an exception applies only if the facts underlying the

14

claim were <u>unknown</u> to the movant or the movant's attorney and <u>could not have</u> <u>been ascertained</u> by the exercise of due diligence.

In the second place, Drew did not allege under 3.850(b)(2) that the fundamental constitutional right violated was not established during the limitations period. His motion included such common claims as coerced confession, evidence tampering, prosecutorial misconduct, and ineffective assistance of counsel.

Finally, under Rule 3.850(b)(3), Drew did not allege any failure by counsel "retained . . . to timely file a 3.850 motion." Drew did attempt to place blame on his appellate attorney, but this attempt is insufficient. According to Drew, appellate counsel refused to send him the necessary transcripts after the denial of his direct appeal. As a result, Drew's brother had to make copies, which he sent to Drew in April 1990. Drew did, however, use the transcripts in preparing his second 3.850 motion in 1992. This alleged delay is of no avail for two reasons. First, Drew's allegations are facially insufficient to merit an exception from the timely filing rule since they do not involve a claim about an attorney retained <u>for</u> <u>the purpose of preparing a 3.850 motion</u>. Second, Drew admits that, despite his attorney's alleged delays, he had the transcripts by 1990 and even used them in 1992. It is inconceivable that the appellate attorney's alleged neglect in any way justified the late filing of the third motion in April 1996.

15

Because Drew's third 3.850 motion was untimely and did not allege facts relevant to any of the statutory exceptions to Florida's filing deadline, the motion was not properly filed under the AEDPA. Therefore, the AEDPA's statute of limitations cannot be tolled for the period during which that motion was pending before the state court.

B.

As an alternative to his unsuccessful claim regarding statutory tolling, Drew also argues that he is entitled to equitable tolling in light of what he considers the unusual and compelling circumstances of this case. It is by now clear in this Circuit that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton, 259 F.3d at 1312. Although "[e]quitable tolling is an extraordinary remedy which is typically applied sparingly," Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 457-58, 112 L. Ed. 2d 435 (1990)), it is "appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (emphasis added). The burden of establishing entitlement to this

16

extraordinary remedy plainly rests with the petitioner. See, e.g., Helton, 259 F.3d at 1313-14 (denying equitable tolling in light of petitioner's failure to present necessary evidence); see also Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993) ("The burden is on the plaintiff to show that equitable tolling is warranted.").

In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control. The magistrate judge in this case found as a fact, and the district court agreed, that Drew acted with no such diligence in pursuing his habeas corpus petition, and the determination of whether a party was diligent is a finding of fact, subject to review for clear error. See, e.g., Hale Container Line, Inc. v. Houston Sea Packing Co., 137 F.3d 1455, 1468 (11th Cir. 1998) (holding that the determination of due diligence is a matter of fact and will not be overturned unless clearly erroneous); Martin v. Occupational Safety & Health Review Comm'n, 947 F.2d 1483, 1484-85 (11th Cir. 1991) (holding that agency's diligence determination is a question of fact, not a mixed question of law and fact); Walters, 803 F.2d at 1145.[2] The record before this court does not

_____

[2]Treating a finding regarding diligence as a finding of fact is consistent with the approach taken by the majority of the circuits in both habeas corpus proceedings and other contexts. See, e.g., Montenegro v. United States, 248 F.3d 585, 591 (7th Cir. 2001), overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir. 2001); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1045

17

support a determination that the magistrate judge or the district court clearly erred in finding Drew dilatory.

The primary focus of Drew's equitable tolling argument is that it would be unfair to dismiss his petition as untimely since he initially filed a timely federal habeas petition that was dismissed without prejudice. Basically, Drew claims that he should not be penalized for complying with the district court's order that he file a third 3.850 motion before returning to federal court. What this argument ignores, however, is the extended amount of time that elapsed between the issuance of the district court's first dismissal order on March 28, 1995, and the filing of Drew's third 3.850 motion more than a year later on April 23, 1996. Because of this delay, Drew's third 3.850 motion was not disposed of by the state court until July 1997. By the time Drew filed his federal habeas petition almost three months later, in October 1997, more than seventeen months had passed since the effective date of the AEDPA and more than five months had passed since the expiration of the

---

(5th Cir. 1998); Suggs v. Servicemaster Educ. Food Mgmt., 72 F.3d 1228, 1233 (6th Cir. 1996); Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 55-56 (1st Cir. 1995); Gaw v. Comm'r of Internal Revenue, 45 F.3d 461, 465 (D.C. Cir. 1995); United States v. Lewis, 980 F.2d 555, 561 (9th Cir. 1992); Whaley v. Rodriguez, 840 F.2d 1046, 1051-52 (2d Cir. 1988). But cf. Martinez v. Sullivan, 881 F.2d 921, 926 (10th Cir. 1989) (holding that ultimate question of whether state acted diligently in trying to obtain presence of declarant for trial testimony was a mixed question of law and fact).

AEDPA statute of limitations. Although Drew claims that his delay in filing the third 3.850 motion was justified by the fact that he did not receive the district court's order until almost one year after it was issued, Drew's own lack of diligence precludes us from equitably tolling the statute of limitations. In particular, the record reflects that, for a period of some sixteen months, Drew made virtually no effort to ascertain the status of his first habeas petition in the district court. This lack of diligence ultimately prevented Drew from filing the instant federal habeas petition until well after the AEDPA statute of limitations had expired.

In objecting to the magistrate judge's Report and Recommendation, Drew argued that the delay in filing the third 3.850 motion was based not on his lack of diligence, but rather on the failure of the Clerk of the Court to send him the order dismissing his first habeas petition. Prior to the objection to the magistrate judge's Report and Recommendation, the only mention of this excuse was the unelaborated statement in his memorandum that "[d]ue to the negligence of the Clerk of the Court of the U.S. District Court, Judge James L. King's [March 28, 1995] order was not sent to petitioner until February 20, 1996." It was not until Drew objected to the magistrate judge's Report and Recommendation that he provided for the first time <u>any</u> allegation regarding his own efforts to learn about the case. Even then,

19

Drew's objections contained no detailed explication of his attempts to obtain information from the district court and listed no information about specific letters that he sent. The only evidence provided by Drew at any stage of the habeas corpus proceeding was a prison official's response to Drew's request for a list of all of his outgoing and incoming legal mail between March 28, 1995 and April 1, 1996. Notably, the document lists only five items: a letter sent to Vicki Shea, Drew's aunt, on January 25, 1995; a letter received from the district court on March 13, 1995; a letter to the district court on January 30, 1996; a letter to Judge King on February 14, 1996; and a letter to the State Attorney on April 24, 1996. Even if this record can be read to establish that Drew did not receive the district court's order in 1995, it provides no indication of the multiple letters of inquiry that Drew claims to have sent to the Clerk's office during the period in question.

A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition. See Knight v. Schofield, -- F.3d -- (11th Cir. 2002); see also Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir. 2001) ("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable

20

tolling if the prisoner has acted diligently in the matter."); <u>Phillips v. Donnelly</u>, 216

F.3d 508, 511 (5th Cir. 2000) (explaining that a delay in receiving notice of denial

of appeal might render equitable tolling appropriate).  Such tolling is not proper

here.  Even assuming that he did not receive the district court's order until

February 1996, Drew has provided no evidence supporting his claim that he

repeatedly attempted to ascertain the status of his case from the Clerk's office, a

burden necessary to sustaining his claim of extraordinary circumstances.  Indeed,

far from depicting diligent efforts to learn about the case, the mail record that

comprises Drew's entire evidentiary proffer actually cuts against his claim, as it

reflects only one letter sent to the Clerk's office.  And even that one letter was not

mailed until January 30, 1996, a full sixteen months after the petition was filed and

only three weeks before he received a copy of the order.  We think that one letter is

plainly an insufficient evidentiary foundation to support Drew's claim of diligence,

let alone to establish that the trial court clearly erred in finding Drew dilatory.[3]

---

[3]Contrary to the reading offered by the dissent, <u>Knight</u> is clearly
distinguishable.  In that case, we held that a petitioner was entitled to equitable
tolling of the AEDPA's statute of limitations because, <u>despite his diligence</u>, he
did not learn about the state court's disposition of his state habeas corpus petition
until eighteen months after the petition had been denied.  At the time that he filed
his motion for discretionary review of his state petition in the Supreme Court of
Georgia, "Knight asked the clerk of the court when he could expect a ruling.  He
was informed that he would be notified as soon as a decision was issued." -- F.3d
at --.  When more than a year had passed after he had made his initial inquiry and

21

Aside from the unavailing mail log, Drew provides no additional information about his alleged attempts, including copies of the letters, the dates on which they were sent, or any description of their contents. Furthermore, he does not claim to have taken any steps other than writing letters, such as calling the Clerk's office by telephone or seeking help from people with the ability to go to the court personally, including the brother and aunt who had helped him with other aspects of his post-conviction challenges. In the absence of any showing of his own diligence, Drew cannot be entitled to the rare and extraordinary remedy of equitable tolling. See, e.g., Helton, 259 F.3d at 1313-14 (denying equitable tolling to inmate whose counsel misinformed him about AEDPA time limit and whose

---

been assured that he would receive notification from the Clerk, Knight again contacted the Clerk for information, at which time he found out that the petition had been denied eighteen months earlier. In holding that Knight was entitled to equitable tolling, a panel of this Court explained that "[i]t is understandable that Knight did not make any inquiries until February of 1998 because the Georgia Supreme Court clerk had assured him that he would be notified as soon as a decision was made." Id. at -- (emphasis added). The Court went on to note "that not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts. In this case Knight was assured that the court would contact him, then demonstrated diligence in pursuing information when it did not do so." Id. Unlike Knight, Drew did not contact the Clerk's office at or near the time that he filed his habeas corpus petition and, most importantly, he received no assurances from the Clerk on which to rely. Drew simply waited sixteen months before taking any steps to learn about his case. On these facts, as opposed to those in Knight, the district court did not clearly err in finding a lack of the diligence required to allow equitable tolling.

22

prison library allegedly lacked copies of relevant law in light of petitioner's failure to state any "independent efforts" that he made to ascertain deadline). With nothing more than a simple allegation in a memorandum before her, we cannot conclude that the magistrate judge clearly erred in finding that Drew had not been diligent. Similarly, the district court did not clearly err in adopting the Report and Recommendation.

The dissent takes issue with the trial court's finding of fact that Drew did not act diligently. In doing so, however, it disregards the unambiguous and longstanding requirement that we review the district court's findings of fact for clear error. Even if there were some reasonable debate as to Drew's diligence (and in our view there is precious little on this record to support that debate), the dissent offers no reason to find clear error, which, after all, requires a conclusion that "the record lacks substantial evidence" to support the determination of the district court.[4] Lightning, 60 F.3d at 1558; see also In re Hillsborough Holdings Corp., 127

_____

[4]The dissent offers only two arguments in support of the contention that the district court committed clear error. First, the dissent faults the magistrate judge for overlooking Drew's claim regarding the delay in receiving notice of the dismissal of his petition. While we have no reason to conclude that the magistrate judge overlooked the alleged delay merely because she failed to mention it explicitly in the Report and Recommendation, we also note that Drew included absolutely no supporting evidence for this claim in his submission to the magistrate judge. Notably, the prison mail log, which Drew claims supports his allegation, was never offered as evidence to the magistrate judge, but rather was

F.3d 1398, 1401 (11th Cir. 1997) (describing clear error as "a very high standard, and one we would rarely be likely to find"). Indeed, rather than according the necessary deference to the district court's findings of fact, the dissent engages in a <u>de novo</u> review of the facts, and in the process eviscerates the trial court's central fact-finding role -- an approach that has no legal basis. <u>See, e.g.</u>, Fed. R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."); <u>Dorsey</u>, 262 F.3d at 1185 ("A district court's factual findings in a habeas corpus proceeding are reviewed for clear error."); <u>Hale Container</u>, 137 F.3d at 1468 (holding that factual finding regarding

proffered only when Drew objected to the magistrate judge's Report and Recommendation.

Likewise, we have no basis to hold that the district court either ignored this document or erred in considering it. The district court's order adopting the Report and Recommendation does not indicate whether the court exercised its discretion to accept the prison mail log as supplemental evidence. <u>See</u> 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b) (both stating that, as part of <u>de novo</u> review of magistrate judge's recommendation, district judge "may . . . receive further evidence"). In light of Drew's failure to present the evidence to the magistrate judge, it would not have been an abuse of discretion for the district court to decline to consider the evidence at all. <u>See</u> <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1507 (11th Cir. 1984) (explaining that Section 636(b)(1) "confers broad discretion to the district judge to hear or dispense with" additional evidence). Of course, for the reasons we discuss, it would have been completely reasonable for the district court to find the prison log unhelpful to Drew in any event.

The dissent also suggests that we should consider statistics indicating that, on average, federal courts do not dispose of habeas corpus petitions in significantly less time than it took the district court to dismiss Drew's first petition in this case. No such statistics were ever presented to the magistrate judge or the district court, or, for that matter, to this Court, and we are reluctant indeed as an appellate court to engage in <u>de novo</u> fact-finding ourselves.

24

diligence will not be overturned unless clearly erroneous); see also Amadeo v.

Zant, 486 U.S. 214, 223, 108 S. Ct. 1771, 1777, 100 L. Ed. 2d 249 (1988) ("It is

well settled . . . that a federal appellate court may set aside a trial court's findings of

fact only if they are 'clearly erroneous.'").

"[E]ven when the district court's findings do not rest on credibility

determinations, but are based instead on physical or documentary evidence," the

Supreme Court has held that appellate courts must review these findings for clear

error because "[t]he trial judge's major role is the determination of fact, and with

experience in fulfilling that role comes expertise." Anderson v. City of Bessemer

City, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511-12, 84 L. Ed. 2d 518 (1985).

Moreover, "the parties to a case on appeal have already been forced to concentrate

their energies and resources on persuading the trial judge that their account of the

facts is a correct one; requiring them to persuade three more judges at the appellate

level is requiring too much." Id. at 575, 105 S. Ct. at 1512. Therefore, the mere

possibility that we may disagree with a district court's fact finding does not permit

us to reverse a trial court's determination absent clear error. On the record

presented to the appellate court in this case, we can find no clear error.[5]

---

[5]In addition to arguing that the district court committed clear error, the dissent says that the diligence requirement of equitable tolling should not apply to Drew since any dilatory behavior occurred prior to the effective date of the

25

AEDPA's statute of limitations. As an initial matter, we disagree with the assertion that Drew's dilatory behavior was confined entirely to the period before AEDPA was enacted, as his sixteen-month delay in filing the third 3.850 motion delayed the filing of the instant habeas petition until more than seventeen months after the AEDPA became law and more than five months after the statute of limitations had expired. Moreover, the dissent's position ignores the crucial distinction between holding that a petition is time-barred under a statute of limitations and declining to grant the extraordinary judicial remedy of equitable tolling. While it is true that a court cannot retroactively punish Drew under the AEDPA's statute of limitations for his failure to pursue the case in a timely manner, see, e.g., Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209, 1211 (11th Cir. 1998), it is equally true that Drew's lack of diligence bars us from reaching out and granting the rare and extraordinary remedy of equitable tolling.

In asking the court to equitably toll the statute of limitations, Drew requests a judicially-crafted remedy that has always been reserved only for parties who have pursued their rights diligently and whose untimeliness is due to factors entirely beyond their control. Indeed, the requirement has its roots in the English courts of chancery, which granted equitable relief to civil fraud plaintiffs who did not learn of defendants' fraudulent actions until after the statute of limitations had run. As early as 1714, these courts made it clear that such relief was available only if the plaintiff could not have discovered the fraud "with proper diligence." See Gibbs v. Guild, 8 Q.B.D. 296, 304-05 (Queen's Bench 1881) (discussing cases). As one of our sister circuits has explained in discussing the English roots of equitable tolling, in order "to win the chancellor's favor, the suitor would have to show by clear and convincing proof that he had been diligent and faultless in pursuit of his rights." Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687, 692-93 (10th Cir. 1981). When the Supreme Court of the United States first embraced the concept of equitable relief from a statute of limitations in Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348, 22 L. Ed. 636 (1874), it explained that such relief would be available only "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence, or care on his part."

Since the middle of the twentieth century, equitable tolling has been expanded to cover not just the belated discovery of a fraud or other cause of action, but also late filing due to misconduct by the defendant or other

circumstances beyond the plaintiff's control. Beginning with the first such case, Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 64 S. Ct. 582, 88 L. Ed. 788 (1944), which held that a six-year statute of limitations did not bar an action because the plaintiff was seeking administrative relief during the six years, courts have always limited such relief only to parties who have been diligent at all times. The Supreme Court explained in R.R. Telegraphers that tolling was proper because "while the litigation shows no evidence of reckless haste on the part of either party, it cannot be said that the claims were not timely pursued. Regrettable as the long delay has been it has been caused by the exigencies of the contest, not by the neglect to proceed." Id. at 349, 64 S. Ct. at 586. As best we can tell, this principle has never been abandoned. See, e.g., Irwin, 498 U.S. at 96, 111 S. Ct. at 457-58 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies . . . . But the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S. Ct. 1723, 1726, 80 L. Ed. 2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); Burnett v. N.Y. Cent. R.R., 380 U.S. 424, 429, 85 S. Ct. 1050, 1055, 13 L. Ed. 2d 941 (1965) (allowing equitable tolling where "plaintiff has not slept on his rights but, rather, has been prevented from asserting them"); Nat'l Cement Co. v. Fed. Mine Safety & Health Review Comm'n, 27 F.3d 526, 530-31 (11th Cir. 1994) (discussing requirement of due diligence for equitable tolling to apply); Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993) (describing due diligence as "necessary" for equitable tolling); Raziano v. United States, 999 F.2d 1539, 1541 (11th Cir. 1993) (emphasizing the "limited availability of equitable tolling" and explaining that it is appropriate only when party has exercised due diligence); Hamilton v. Gen. Motors Corp., 606 F.2d 576, 579 (5th Cir. 1979) (holding equitable tolling inappropriate where plaintiff "did nothing for several years" to pursue lawsuit).

As Justice Frankfurter explained in Holmberg v. Armbrecht, 327 U.S. 392, 66 S. Ct. 582, 90 L. Ed. 743 (1946), a laches case, equitable relief is limited to diligent parties not because of the existence of any statutory requirements, but out of recognition of "historic principles of equity in the enforcement of federally-created equitable rights," id. at 395, 66 S. Ct. at 584:

Traditionally and for good reasons, statutes of limitations are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair. "There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court." A federal court may not be bound by a State statute of limitation and yet that court may dismiss a suit where the plaintiffs' lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence. A suit in equity may fail "though not barred by the act of limitations."

Id. at 396, 66 S. Ct. at 584 (quoting McKnight v. Taylor, 42 U.S. (1 How.) 161, 168, 11 L. Ed. 86 (1843)) (additional quotations and citations omitted).

The dissent fails to recognize that, by asking for equitable tolling, Drew seeks the very kind of equitable relief that has always been reserved only for parties who could not have prevented their late filings. Because Drew failed to pursue his case for a period of sixteen months, we cannot say that he has acted with the "conscience, good faith, and reasonable diligence" necessary "to call into action the powers of the court." This conclusion is based on the longstanding, firmly rooted principle that a court cannot grant equitable tolling unless it is satisfied that the party seeking such relief has acted with diligence. The diligence requirement that we recognize has been imposed for centuries by judges applying principles of equity jurisprudence. The dissent may disagree with the district court's determination that Drew's sixteen-month delay constituted a lack of diligence, but we are in no position to reverse that determination absent clear error. In light of this fact pattern and the findings of the trial court, we are bound to hold that Drew's lack of diligence unambiguously precludes the rare and extraordinary remedy of equitable tolling.

Confronted with the long line of cases requiring diligence before a statute of limitations can be equitably tolled, the dissent points to no case law supporting its contention that diligence is not necessary. Nothing in the recent opinion in

28

We are also satisfied that there is no basis for concluding that Drew should have received an evidentiary hearing on his equitable tolling claim. Section 2244 of Title 28 of the United States Code does not require a hearing on the issue of time-bar or equitable tolling, so the decision as to whether to conduct an evidentiary inquiry is a matter left to the sound discretion of the district court. See Fisher, 262 F.3d at 1145; see also Brown, 255 F.3d at 1277 n.4 (11th Cir. 2001)

Aron v. United States, -- F.3d -- (11th Cir. 2002), changes the longstanding diligence obligation. In Aron, a panel of this Court held that it would be improper to apply retroactively the AEDPA's rule that the statute of limitations for a 28 U.S.C. § 2255 motion to vacate, set aside, or correct a sentence runs from, inter alia, "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4). Because this statutory time limit did not exist before the AEDPA was enacted on April 24, 1996, the panel explained, logically, that petitioners were not obligated to comply with the statute by exercising due diligence before its enactment. Unlike this statutory diligence requirement, however, equitable tolling has always required a showing of diligence. While we could not require a petitioner to comply with a statutory mandate that did not exist at the time of his conduct, there is nothing at all impermissible or retroactive about requiring a petitioner seeking the equitable relief of tolling to comply with judicially-crafted standards that were long and firmly established by the time of the conduct in question. Furthermore, as Judge Carnes pointed out in his concurring opinion in Aron, the portions of the majority opinion upon which the dissent in this case relies are plainly dicta because the facts of Aron did not involve a lack of diligence before the enactment of the statute. See Browning v. AT&T Paradyne, 120 F.3d 222, 225 n.7 (11th Cir.1997) ("Since this statement was not part of any holding in the case, it is dicta, and we are not bound by it.") (citation omitted). Indeed, to the contrary, the petitioner in Aron displayed diligence both before and after the enactment of the statute, while in this case Drew showed precious little diligence at any time.

29

(applying abuse of discretion standard to district court's decision regarding evidentiary hearing on habeas petition). Even if Drew could somehow prove that he did not receive the district court order (and for these purposes we assume this to be so), he has offered no reason to believe that an evidentiary hearing would help him prove that he acted diligently in trying to obtain it. In fact, as discussed already, the same document that would support the claim that he did not receive the order would almost certainly defeat any claim that he sent repeated letters to the Clerk of the Court.[6] Simply put, an evidentiary hearing would be of no value to Drew even if he could show that he did not receive the district court order. In light of the wholly conclusory nature of Drew's recently-presented allegations and in the absence of supporting evidence, the district court did not abuse its discretion in deciding not to hold a hearing.[7]

---

[6]Because Drew's lack of diligence would make him ineligible for equitable tolling even if he could prove that he did not receive the district court's order, this case is wholly distinguishable from those in which evidentiary hearings were granted for the purpose of determining whether or not a petitioner received a relevant order. See, e.g., Phillips, 216 F.3d 508. Again, even if Drew could show that he did not receive the order, he has not acted with sufficient diligence to merit equitable tolling.

[7]The dissent suggests that the Drew should have received an evidentiary hearing because he alleged that he sent letters to the Clerk's office and pursued his case diligently. This suggestion ignores our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support, especially when the

## III.

Because the AEDPA statute of limitations cannot be tolled for the time during which Drew's untimely 3.850 motion was pending before the state court and because Drew is not entitled to equitable tolling in light of his own lack of diligence, the district court properly dismissed his petition for a writ of habeas corpus. The judgment below is therefore AFFIRMED.[8]

---

evidence that has been presented undermines the petitioner's claim. See, e.g., Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing . . . 'when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.'") (quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (en banc)) (internal quotations omitted) (emphasis in original). In asserting that the district court should have granted an evidentiary hearing, the dissent disregards the purpose and deferential nature of the abuse of discretion standard. "As we have observed, the abuse of discretion standard of review recognizes that for the matter in question there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make." McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001).

[8]Drew appears to suggest that the time-bar problem could have been avoided if the district court had retained jurisdiction over his first petition and held that petition in abeyance while the unexhausted claims were pursued on remand to the state court. Some courts have endorsed this approach. See Palmer v. Carlton, 276 F.3d 777, 781 (6th Cir. 2002); Delaney v. Matesanz, 264 F.3d 7, 14 n.5 (1st Cir. 2001); Zarvela v. Artuz, 254 F.3d 374, 380-82 (2d Cir. 2001); Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000); Calderon v. United States Dist. Ct., 134 F.3d 981, 988 (9th Cir. 1998) (all endorsing retention of jurisdiction during remand over petitions containing both exhausted and unexhausted claims). But see Graham v. Johnson, 168 F.3d 762, 778-80 (5th Cir. 1999) (holding that mixed petitions should be dismissed, not held in abeyance). See also Walker, 533 U.S. at 182-83, 121 S. Ct. at 2130 (Stevens, J., concurring) (suggesting that equitable tolling should be available to petitioners who acted diligently in filing for post-conviction relief but whose petitions were dismissed as untimely because prior federal habeas petitions did not toll statute of limitations). Whatever the merits of the

31

approach, the question need not be addressed here because equitable tolling is inappropriate in light of Drew's own lack of diligence.  In the end, it was Petitioner's delay, not the fact that the district court dismissed the first petition, that rendered the instant petition untimely.

BARKETT, Circuit Judge, dissenting:

While I agree with the majority's discussion of statutory tolling, I do not join the opinion because I believe its discussion of equitable tolling is flawed and imposes an unjust result. The majority's reasons for finding that Drew is not entitled to equitable tolling have no legal basis and offend basic notions of fair process. I believe the majority's view of the applicable law is erroneous and accordingly yields a distorted and impoverished conception of this Court's traditional equitable power.

The majority's most fundamental error can be stated simply: It denies equitable tolling on the ground that Drew failed to exercise diligence before he was subject to any diligence requirement. The majority believes that Drew was not diligent between the time he filed his first federal habeas petition in September 1994 and the time he belatedly received the order dismissing it in February 1996. The statute of limitations that Drew now seeks to toll is contained in AEDPA, which was not enacted until two months later, on April 24, 1996. In other words, the majority assumes that Drew must show he was diligent even before the statute of limitations he seeks to toll was enacted into law. That assumption is both wrong and unfair. However, even if it were not, under the facts of this case, the majority reaches the wrong result under its own analysis by concluding that Drew was not

diligent and that he is not entitled to an evidentiary hearing on the question of his diligence.

## I. The Applicable Law

A statute of limitations contains an inherent element of harshness, since it operates to deprive litigants of the ability to protect their rights simply by the passage of time. See, e.g., Goetz v. Sec'y of Health & Human Servs., 4 Fed. Appx. 827, 830 (Fed. Cir. 2001). When certain circumstances prevent a litigant from acting within the statutory period, however, the doctrine of equitable tolling abates this harshness by "stopping the clock" during the time the litigant was unable to act. See Justice v. United States, 6 F.3d 1474, 1475 (11th Cir. 1993) ("The doctrine of equitable tolling abates the harsh operation of the statute of limitations under certain circumstances in which barring a plaintiff's potentially meritorious action would be unjust."); Ellis v. GMAC, 160 F.3d 703, 706 (11th Cir. 1998) ("'Equitable tolling' is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances."). Equitable tolling adds to the time to file a claim any time during which relevant conditions prevented the plaintiff from acting within the statutory period to preserve his or her rights. As the majority notes, this Court has held in the context of AEDPA's limitation period that equitable tolling is

"appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999).

As Sandvik indicates, equitable tolling exists to mitigate the harshness of a statute of limitations for a litigant who diligently, but—because of circumstances beyond his control—unsuccessfully, attempted to comply with it. In determining whether equitable tolling is appropriate, a court therefore asks whether the claimant diligently attempted to comply with the statute of limitations. See, e.g., Irwin v. Dep't of Veterans Admin., 498 U.S. 89, 96 (1990) (equitable tolling appropriate where claimant filed defective pleading during statutory period); Goldsmith v. City of Atmore, 996 F.2d 1155, 1161 (11th Cir. 1993) (same); Flight Attendants Against UAL Offset (FAAUO) v. Comm'r, 165 F.3d 572, 576 (7th Cir. 1999) ("a party who wants to appeal to the doctrine of equitable tolling to excuse a late filing [must] show . . . that he tried diligently to file within the deadline or as soon afterwards as possible."); Husch v. Szabo Food Serv. Co., 851 F.2d 999, 1004 (7th Cir. 1988) (plaintiff entitled to equitable tolling because she made a reasonable effort to comply with the Age Discrimination in Employment Act's limitation period for filing a federal lawsuit). What the majority fails to recognize—but what follows from the fact that equitable tolling is a remedy for a litigant who has

35

diligently attempted to comply with the statute of limitations—is that the diligence Sandvik requires must occur while the statute runs. It matters not if it occurs before the statute begins to run, because at that point the clock has not begun to tick; and it matters not if it occurs after the statute has run, because then the clock has already stopped: Both before and after, there is nothing to toll. Simply put, the petitioner's diligence must correspond to the time he seeks to toll. See Brackett v. United States, 270 F.3d 60, 71 (1st Cir. 2001) (candidate for equitable tolling must "act[] with 'reasonable diligence throughout the period he seeks to toll.'" (emphasis added) (citation omitted)); Green v. United States, 260 F.3d 78, 81 (2d Cir. 2001) (same).[1]

A statute of limitations, by its own terms, requires a certain amount of diligence, because plaintiffs who do not act diligently to protect their rights run the risk that the time will expire on their ability to do so. It therefore makes obvious sense to say that a plaintiff who did not diligently attempt to comply with the statute of limitations is not entitled to the remedy of equitable tolling. A plaintiff

---

[1]The Irwin Court stated: "We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." 498 U.S. at 96 (citation omitted) (emphasis added). Clearly, it makes sense to refer to a need to "preserve" one's legal rights only when they are at risk of expiration. When no statute of limitations is running, a claimant does not have to do anything to "preserve" his or her rights.

who makes no effort to bring suit within the period allowed by law cannot invoke the court's equitable power to toll the statute of limitations. See, e.g., Higgins v. Runyon, 921 F.Supp. 465 (E.D.Mich. 1996) (plaintiff who did not attempt to comply with Title VII filing deadlines not entitled to equitable tolling); Her by Her v. Sec'y of Health & Human Servs., 33 Fed. Cl. 542 (1995) (plaintiffs who did not diligently attempt to file within statutory period not entitled to equitable tolling). But it is equally obvious that a plaintiff can neither attempt, nor fail to attempt, to comply with a statute of limitations that does not exist. The question whether a plaintiff made a diligent effort to comply with a non-existent statute of limitations is simply meaningless.

The majority attempts to avoid this absurdity by suggesting that the equitable tolling inquiry is not really concerned with whether the plaintiff made a diligent effort to comply with the statute of limitations he seeks to toll, but with whether the plaintiff was diligent at every time that might conceivably affect his ability to satisfy a later-enacted, unforeseeable and unforeseen, statute of limitations. This suggestion is without legal precedent, and it is unfair because it violates the basic concept of notice: Drew had no way to know that, while he complied with the federal district court's instruction to exhaust his remedies in state court, federal law would change to impose a statute of limitations on his

return to federal court.  In essence, the majority's rule penalizes Drew not for his

lack of diligence, but for his lack of clairvoyance.[2]

It becomes clear that the majority is really ruling against Drew on the basis

of his failure to anticipate a future Act of Congress when one considers the law in

---

[2]That is why the historical survey offered by the majority in footnote 5 is beside the point.  No one has questioned whether equitable tolling has always imposed an attendant obligation to make a diligent effort to comply with the statute of limitations; the only question is whether the claimant may sensibly be considered subject to that obligation prior to the enactment of the statute of limitations that he later seeks to toll.  The majority cites one case, Holmberg v. Armbrecht, 327 U.S. 392 (1946), for the proposition that "equitable tolling" is not limited to diligent parties "because of the existence of any statutory requirements . . . ."  The flaw in the majority's argument is that Holmberg was not an equitable tolling case; it was a case in which the defendant asserted a laches defense.  Since the point of laches is that it may function to bar suit even in the absence of a statute of limitations, obviously a laches defense is not tied to the existence of a statute of limitations.  After the passage quoted by the majority, the Holmberg Court wrote: "Equity has acted on the principle that 'laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or parties.'"  327 U.S. at 396 (quoting Galliher v. Adwell, 145 U.S. 368, 373 (1892)).  Surely the majority cannot mean to suggest that Drew's alleged lack of diligence rises to a level that would support a laches defense—particularly when, in state court, Florida reversed its position on the issue of procedural bar and then asked for repeated extensions of time to file while the statute was running on Drew's ability to protect his rights in federal court.  If we were really to balance the equities in this case, we would find that the change in conditions—the enactment of AEDPA and Florida's reversal of its position in state court and requests for extensions of time—prejudiced Drew, and therefore supports his argument for equitable relief.  In any event, Holmberg offers no support for the majority's novel argument that the remedy of equitable tolling of a statute of limitations is not tethered to the existence of that statute of limitations.

existence at the time of Drew's alleged lack of diligence. Before the enactment of AEDPA on April 24, 1996, the right of a prisoner to file a petition for habeas corpus was not subject to any statute of limitations. See Smith v. Jones, 256 F.3d 1135, 1143 (11th Cir. 2001) (explaining that prior to AEDPA, "the law permitted [prisoners] to delay filing for years."). Although the fact of incarceration may have given prisoners an incentive to seek habeas relief sooner rather than later, they also had obvious reason to take the time necessary to file petitions that presented their claims as effectively as possible. See Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) ("If prisoners wished to spend more time preparing their petitions—albeit at the potential cost of suffering a longer period of unlawful confinement—the law afforded them that opportunity."). In short, under pre-AEDPA law, the timing of habeas review was the prisoner's choice to make. And in reliance on this law, many petitioners had not filed petitions within one year of the date on which their convictions became final, as AEDPA would later require. See Smith, 256 F.3d at 1143.

After AEDPA was enacted, courts were confronted with the question of how to apply the new law to petitioners whose convictions became final before AEDPA's enactment and who were now seeking to file a habeas petition more than a year after the date on which the conviction had become final. We answered that

question for state prisoners in <u>Wilcox v. Fla. Dep't of Corr.</u>, 158 F.3d 1209 (11th Cir. 1998), holding that a one-year grace period for filing a federal habeas petition would apply to those petitioners whose convictions became final before the date of AEDPA's enactment.[3] We explained that "it would be unfair, and impermissibly retroactive," to apply AEDPA's limitation period to prisoners whose convictions became final before the Act's effective date. <u>Wilcox</u>, 158 F.3d at 1211; <u>Goodman</u>, 151 F.3d at 1337.

In <u>Aron</u>, we followed <u>Goodman</u> and <u>Wilcox</u> in holding that § 2255(4), which states that a petition is timely if filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," is not to be retroactively applied. 291 F.3d at 713. We explained that before the enactment of AEDPA, there was no requirement that a petitioner exercise diligence in discovering new facts in order for a petition based on those facts to be timely filed. <u>Id.</u> Citing <u>Goodman</u>, we reasoned that "'[i]t would be unfair and impermissibly retroactive' to require [the petitioner] to have exercised due diligence before there was any legal requirement that he do so," and therefore held that a petitioner "cannot be penalized for any

_____

[3]We had already answered the question the same way for federal prisoners in <u>Goodman v. United States</u>, 151 F.3d 1335 (11th Cir. 1998).

40

lack of diligence before AEDPA's enactment, because at that time there was no requirement that he act diligently." Id.

In the absence of any statute of limitations, pre-AEDPA law gave prisoners the right to decide the timing of habeas review; thus, the requirement that a prisoner exercise diligence in order to be entitled to equitable tolling of AEDPA's statute of limitations did not enter the landscape of federal habeas law until AEDPA's statute of limitations itself was enacted on April 24, 1996. The worst that can be said of Drew's pre-AEDPA conduct is that he took the time that pre-AEDPA law allowed him. That tells us nothing about his entitlement to equitable tolling of the later-enacted statute of limitations. Again, since it is the statute of limitations that the petitioner is seeking to toll, the relevant inquiry is whether the petitioner diligently attempted to comply with the statute of limitations. It is a fundamental principle of equity jurisprudence that we consider only that portion of the litigant's conduct that has an "immediate and necessary relation" to the remedy sought. See Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933) ("[C]ourts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation."); see also Meis v. Sanitas Serv. Corp., 511 F.2d 655,

41

657-58 (5th Cir. 1975) (equitable relief not barred because the irregularities complained of were not sufficiently related to the subject matter of the suit)[4]; Justice, 6 F.3d at 1480 (noting that "traditional principles of equity jurisprudence" are appropriate in reaching a decision on equitable tolling). Without the delay in Drew's receipt of the district court's order of dismissal, he may have been able to file his second federal petition on time; then again, he may not.[5] But apart from any causal uncertainty, there simply is no "immediate and necessary" equitable relation between what Drew did while he was subject to pre-AEDPA law, which

---

[4]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[5]Contrary to the majority's assertion that Drew's alleged "lack of diligence ultimately prevented [him] from filing the instant federal petition" on time, there is in fact no certainty that, had Drew done everything the majority demands of him, he would have been able to file his federal petition within the one-year limitation period. Since the time it takes to reach a decision can vary widely, often depending on factors beyond the individual case (such as the court's workload and schedule), there is no guarantee that Drew would have been able to file his federal petition on time merely by commencing his state proceedings earlier. Had the state courts taken longer to adjudicate his motion, he might still have been unable to file his federal petition within AEDPA's one-year period. Thus, we cannot say whether the delay in Drew's receipt of the order of dismissal was a "but for" cause of his inability to file his federal petition on time. I also note that, had the state courts been able to adjudicate Drew's motion more quickly—for example, had the State not requested and received three extensions of time to file—Drew would have been able to file the present federal petition on time notwithstanding the delay in the receipt of the order dismissing the first federal petition.

42

contained no statute of limitations, and what he did (or could have done) to comply with AEDPA's statute of limitations once it was enacted. At no point did Drew fail to do something that he was required to do under the applicable law.

By projecting a diligence requirement back into the law at a time when it contained no statute of limitations, the majority effectively gives AEDPA retroactive application. That is something this Court has consistently held to be impermissible and unfair. See, e.g., Goodman, 151 F.3d at 1337 ("It would be unfair, and impermissibly retroactive, to apply § 2255's one-year 'period of limitation' to federal prisoners . . . whose convictions became final prior to the effective date of § 105 of the AEDPA."); Wilcox, 158 F.3d at 1211 (extending Goodman to § 2254 as well); Smith, 256 F.3d at 1143 ("'[I]t would be unfair and impermissibly retroactive' to cut off review for noncompliance with a rule that had not existed when the noncompliance occurred."); Aron, 291 F.3d at 713 ("It would be unfair and impermissibly retroactive' to require [the petitioner] to have exercised due diligence before there was any legal requirement that he do so.").

The majority engages in a formulaic recital of the diligence requirement, but by ignoring the temporal context of the events in this case, it misrepresents and distorts the purpose of equitable tolling. Pre-AEDPA law did not require Drew to act by a certain date, and Drew had no reason to know that Congress would later

amend the law to impose a statute of limitations.  Consequently, the majority has no equitable basis for refusing to toll the statute simply because it finds that Drew did not act with the diligence that the law would <u>later</u> require of him.[6]

## II.  Drew's Alleged Lack of Diligence

Even if Drew had been subject to a statute of limitations during the period the majority focuses on, I would still disagree that the record establishes that Drew was not diligent.  The majority is concerned with the period between Drew's filing of his first federal petition and his return to state court with his renewed motion for state post-conviction relief.  Unlike the magistrate (and, by adoption, the district court), the majority's objection is not that Drew simply waited too long to return to state court, because (as the majority recognizes) Drew claims—and the State does not contest—that he did not receive notice of the dismissal of his federal petition

---

[6]I also note that the State, having urged the district court to require Drew to exhaust state remedies (that it then argued in state court were procedurally barred)—and, as Drew points out, having requested and received three extensions of time in state court—may not now claim undue prejudice from our decision to grant equitable tolling.  <u>See</u> <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 152 (1984) ("absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified"); <u>Raziano v. United States</u>, 999 F.2d 1539, 1542 (11th Cir. 1993) (same).

44

until some ten months after it was actually dismissed.[7]  Nor is the majority's

objection that Drew did not act to ascertain the status of his case, because we know

that he received a docket report after writing to the clerk, and a copy of the order of

dismissal after writing directly to the presiding judge.[8]  Rather, the majority is

_____

[7]It appears that the magistrate's report (which the district court adopted) either simply overlooked or plainly ignored Drew's claim that he did not receive a copy of the order of dismissal.  The magistrate wrote that "Drew allowed more than a year to elapse before he returned to the state forum and attempted to exhaust his unexhausted claims . . . ."  Magistrate's Report and Recommendation at 10.  Although the majority suggests that it can find no "clear error" in the district court's conclusion that Drew was not diligent, it is hard to imagine a clearer error than the court ignoring the fact that Drew did not receive timely notice of the court's dismissal.

I also note that the magistrate, like the majority, held Drew to AEDPA's standards before it was enacted:  "Thus, by the time Drew acted on this court's dismissal without prejudice of his first § 2254, a period of time longer than the AEDPA's limitations period had already passed . . . .  The new one-year limitations period in the AEDPA is aimed at curtailing just such dilatory practices."  Id.  In other words, the magistrate observed that AEDPA was enacted after the alleged "dilatory practice" in this case, but nonetheless ruled against Drew because, before AEDPA's enactment, "a period of time longer than the AEDPA's limitations period had already passed."  In my view, that is a legal error that would vitiate the district court's factual finding even if that finding were not itself clearly erroneous.

[8]The majority writes that Drew's claim of diligence rests on "one letter." That cannot be right.  The majority itself notes that two letters (one to the clerk, and one to the presiding judge) were documented in response to a request Drew filed with prison officials; moreover, Drew's letter of January 30 explains that he had just received a docket report indicating that his case was dismissed in response to a letter of inquiry sent on January 18, 1996.  In other words, even in the absence of an evidentiary hearing, there is reason to believe that Drew sent at least three letters regarding the status of his case.

concerned that Drew did not contact the court soon enough or often enough to ask what was happening with his case.[9]  That, in the majority's view, is the lack of diligence that precludes equitable tolling.

While diligence for a pro se habeas petitioner entails attentiveness to the progress of his case, any duty to inquire with the court regarding the status of one's case cannot arise before the court is afforded a reasonable time to consider and rule upon the petition; it is, after all, the court's responsibility to notify litigants when a result has been reached.[10]  Cf. Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) ("A prisoner who delivers a document to prison authorities gets the benefit

---

[9]We have previously held that equitable tolling is appropriate where there has been a delay in the prisoner's receiving notice of a court's resolution of his or her case.  See Knight v. Schofield, ___ F.3d ___ (11th Cir. 2002).

[10]If litigants were required to inquire about the status of their case before giving the court a reasonable period to reach a decision and notify them of the result, court personnel would be faced with a substantial administrative burden.  For example, in the year 2000, 58,257 prisoner petitions were filed in the U.S. district courts.  See John Scalia, U.S. Dep't of Justice, Office of Justice Programs, Bureau of Justice Statistics, Prisoner Petitions Filed in U.S. District Courts, 2000, with Trends 1980-2000 1 (2002).  Under the majority's approach, the failure of all of these prisoners to make inquiries about the progress of their cases subjects them to a risk of being found indiligent and thus ineligible for equitable tolling should any statute of limitations problem subsequently arise.  Were all of these prisoners to do what the majority says Drew should have done—send letters, make phone calls, and have relatives go to the court personally to make inquiries—the court clerks would be considerably busier than they already are.  And of course, since equitable tolling may apply to a wide variety of lawsuits, the effect of the majority's reasoning is not confined to petitions filed by prisoners.

46

of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time.").

In the absence of hindsight, what should we assume was a reasonable period for the adjudication of Drew's federal petition? The majority does not say, and I cannot discern any basis for its unelaborated finding that Drew was dilatory simply by allowing sixteen months to elapse before inquiring about the status of his case—assuming, for present purposes, that he in fact did nothing for sixteen months. Indeed, the majority's position is squarely at odds with a prior decision of this Court. In a recent case, we equitably tolled AEDPA's statute of limitations after finding that the petitioner exercised diligence by inquiring with the court sixteen months after the court had actually <u>denied</u> his application—in other words, a period longer than Drew waited here. See <u>Knight v. Schofield</u> ___ F.3d ___ (11th Cir. 2002). The majority argues that <u>Knight</u> is distinguishable on the ground that the Clerk informed Knight that he would be notified as soon as a decision was issued. But that is not a crucial piece of information that Drew was missing. Drew had every reason to expect that the court would notify him once it ruled on his petition; every litigant knows that the court is supposed to inform the parties when a result has been reached. Knight, for that matter, was no exception: What he actually asked the Clerk was "when he could expect a ruling." <u>Id.</u> at ___. The

47

Clerk declined to answer that question, and instead told him what he surely already knew—that he would be notified once the court ruled on his petition. The majority's suggestion that it would make all the difference to Drew's case had the Clerk of the district court told him, at the time he filed his petition, that he would be notified of the result is disingenuous.[11]

Sixteen months seems like a long time to the majority in part because Drew's first federal petition was actually dismissed after six months, and thus some ten months may have elapsed by the time he inquired about his case. However, it is important to bear in mind that his second federal petition was not dismissed until fifteen months had passed, and then it took another fourteen months for Drew simply to obtain a certificate of appealability addressing the

---

[11]The majority does not acknowledge that Knight waited considerably longer than Drew before contacting the court to inquire about his case. The majority does note that two other circuits have also found equitable tolling appropriate where the petitioner receives late notice of the disposition. See Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir. 2001); Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000). Nonetheless, the majority argues that the present case is distinguishable because Drew did not diligently attempt to ascertain the status of his petition. However, the Tenth and Fifth Circuit cases cited by the majority report no efforts whatsoever by these petitioners to ascertain the status of their petitions. Thus, if Drew's case is distinguishable, it is distinguishable on the ground that Drew did inquire with the court regarding the status of his case—and sooner than the petitioner did in Knight.

48

timeliness of his petition. Thus, as a general matter, the timing of Drew's inquiry was not significantly out of line with the progress of his federal proceedings.[12]

Moreover, the fifteen months the court spent on Drew's second petition—rather than the six months it spent on his first—is closer to the average time the federal district courts require to adjudicate habeas petitions from state prisoners. According to a study conducted by the Bureau of Justice Statistics in 1995, federal habeas petitions involving non-capital homicide convictions and presenting three or more issues—petitions like Drew's, in other words—took on average 436 days to resolve; if we take into account the kinds of issues presented, the average rises to as much as 608 days. Roger A. Hanson & Henry W.K. Daley,

---

[12]If it had been the first petition that took fifteen months to resolve, sixteen months would not seem so long, because Drew would have waited only one month longer than the time the court had actually spent adjudicating the petition. Or suppose that when Drew inquired after sixteen months, he was informed that the court had not yet reached a decision, and the court then issued its decision a month later. I do not believe the majority would construe Drew's failure to have made inquiries before sixteen months had elapsed, <u>even though the court had not yet reached a decision</u>, as a lack of diligence that would preclude equitable tolling in the future. But in both of these hypotheticals, Drew does exactly what he did in this case; as I shall explain, the only difference in these examples is that the court resolves the case in a time closer to the average time the federal district courts spend on habeas petitions from state prisoners. But if we would not find Drew dilatory when the timing of the court's decision making was closer to the average and thus more in line with the timing of Drew's inquiry, we cannot find him dilatory just because the district court happened to resolve his first petition more quickly.

U.S. Dep't of Justice, Office of Justice Programs, Bureau of Justice Statistics,

Federal Habeas Corpus Review: Challenging State Court Criminal Convictions 23,

25 (1995).[13] Even if we assume that the first time Drew attempted to ascertain the

status of his case was in his letter to the district court on January 18, 1996, and do

not consider the types of claims presented in his petition, then he waited only 54

days beyond the average date by which a federal court would have ruled on the

petition.[14] Once we take into account the types of claims raised, Drew indisputably

contacted the court well before the average date on which a federal district court

could have been expected to reach a decision on the merits.

A petitioner who contacts the court to inquire about the status of his case

before the average time by which a federal district court would have reached a

---

[13]Among the sample cases in the study, those involving a claim of prosecutorial misconduct took on average 608 days to resolve; those involving Fifth Amendment claims took 560 days; those involving ineffective assistance of counsel claims took 555 days. Id. at 23. Drew's petition included all three kinds of claims. While petitions dismissed on procedural grounds were generally resolved in less time than those decided on the merits, a petitioner of course cannot know prospectively on what basis the court will rule.

[14]Of course, the most reasonable assumption for a petitioner who has not heard anything about the status of his case within a couple of months after the average date on which a court would have reached a decision is that his petition is taking longer than average to resolve, not that the court has neglected to inform him about the disposition of his case. For example, ten percent of the habeas cases in the Bureau of Justice Statistics study took more than 761 days—in other words, over two years—to resolve. Id. at 20.

decision has, in my view, acted with all due diligence. Indeed, it would be reasonable to allow the court somewhat longer than the average time before making inquiries. Consequently, we should not conclude that sixteen months was unreasonably long. The majority has identified no basis for its finding (contrary to a prior decision of this Court) that a sixteen month "delay" before contacting the court about the status of the petition constitutes a lack of diligence.[15]

### III. The Right to an Evidentiary Hearing

Under the approach I would take to this case, I do not think an evidentiary hearing is necessary, because I would not consider whether Drew was diligent before he was subject to any statute of limitations, and it is clear from the record that, once Drew was subject to AEDPA's statute of limitations, there was nothing he could have done differently, since his Rule 3.850 motion had already been filed

---

[15]Again, the majority claims that it can find no "clear error" in the district court's determination that Drew was not diligent. But as noted earlier, see supra note 7, the magistrate's report (which the district court adopted) overlooked or ignored Drew's claim regarding the delay in receiving the notice of dismissal. That was clear error. But rather than remanding for a consideration of the actual facts by the district court, the majority then engages in a "de novo review of the facts," deciding that, even if Drew did not receive any notice about the disposition of his case, he still was not diligent because he did not inquire about the status of his case soon enough. The majority's conclusion, offered with no reasoning, is clearly erroneous because, as I explained in the text, the timing of Drew's inquiry was in line both with the average time federal courts spent on similar habeas petitions and with the general progress of his own federal proceedings.

51

in the state court. And even if, following the majority's approach, I were to consider Drew's diligence in the year before AEDPA was enacted, I think the record provides ample evidence that Drew inquired about the status of his case within a reasonable period of time, so once again the equitable tolling issue could be decided without an evidentiary hearing. However, the majority has a different, albeit unspecified, conception of what period of time is reasonable, and finds that Drew is not entitled to an evidentiary hearing because it believes the record establishes that he was not diligent within that period. I disagree. If I agreed with the majority that sixteen months was too long to wait, I would at least conclude that Drew's allegations are sufficient to entitle him to an evidentiary hearing on the question of whether he actually did nothing for sixteen months.

As the majority indicates, we review a district court's denial of an evidentiary hearing for an abuse of discretion. We have held that a district court abuses its discretion by failing to hold an evidentiary hearing when the petitioner alleges facts that, if true, would entitle him to relief. See, e.g., Kennedy v. Dugger, 933 F.2d 905, 909 (11th Cir. 1991); Yordan v. Dugger, 909 F.2d 474, 478-79 (11th Cir. 1990). That standard is the same whether the hearing is held on the merits of the petitioner's claims or on the procedural impediments to review. See Aron, 291 F.3d at 715 (noting that the petitioner's procedural claim would "entitle him to

relief in the form of a timely petition" and finding that the district court abused its discretion in failing to hold an evidentiary hearing).

The magistrate's report did not acknowledge Drew's claim that he had not received a copy of the order dismissing his petition, writing only that "Drew allowed more than a year to elapse before he returned to the state forum and attempted to exhaust his unexhausted claims . . . ." Magistrate's Report and Recommendation at 10. As a result, the report was concerned not with whether Drew had been diligent in inquiring about the status of his case, but with whether he diligently followed up on the order of dismissal, assuming he received it shortly after it was entered on March 28, 1995.[16] In his objections to that report, Drew therefore sought to make clear that he did not receive a copy of the order until February 20, 1996, attaching a prison official's response to his mail record request showing no incoming mail from the district court after March 13, 1995. Drew also stated in his objections that he wrote "several letters of inquiry" and that the clerk

---

[16]In other words, what Drew must prove in order to be entitled to equitable tolling has been a moving target. For the magistrate, it may have been enough for Drew to show that he did not receive the order, but the majority thinks Drew should have offered proof of his efforts to obtain a copy of the order. I also note that the State did not raise the question of Drew's diligence when it discussed the timeliness of his petition.

"ignored, or disregarded the 'Status Checks' on Petitioner's case for a while" until the docket report was sent on January 24, 1996.

The majority recognizes that Drew intended the prison mail record to support his claim that he did not receive timely notice of the district court's order of dismissal, rather than that he diligently monitored the status of his case. But the majority argues nonetheless that an evidentiary hearing could not help him because "the same document that would support the claim that he did not receive the order would almost certainly defeat any claim that he sent repeated letters to the Clerk of the Court." That is incorrect. The majority simply assumes that Drew would be unable to explain any omissions from the list of legal mail or adduce any proof that he made other inquiries.[17] It is important to bear in mind that Drew had only ten days to respond to the magistrate's report, which recommended dismissing his petition for a different reason than the one the majority now considers dispositive.

---

[17]For example, Drew may not have marked the letters of inquiry as legal mail. The mailroom documentation on which the majority relies is clearly incomplete, because it makes no mention of the January 18 letter, or of the January 24 docket report (which was also attached as an exhibit to Drew's objections), or even of the copy of the order of dismissal, which Drew notes was sent through the regular (as opposed to legal) mail. We also do not have a copy of the actual mail record; rather, the "record" we possess is a handwritten response on Drew's "Inmate Request" form.

We simply don't know what Drew could prove if he had knowledge of what he needed to prove and more than ten days in which to gather his proof.

The majority also faults Drew for not proffering all the evidence that he would present if his request for an evidentiary hearing were granted. But that is not what the law requires. It is the <u>allegations</u> that determine whether there should be an evidentiary hearing, and it is in that hearing that the petitioner is required to furnish proof. <u>See</u> <u>Aron</u>, 291 F.3d at 715 n. 6. Drew alleges that he sent several "letters of inquiry" to the clerk of the court, and that his "status checks" were ignored. If he could prove that he did so, he would be entitled to relief even on the majority's theory of the case. Accordingly, the majority should have found that the district court abused its discretion in failing to hold an evidentiary hearing.

## IV. Conclusion

The majority's erroneous preoccupation with events predating AEDPA's enactment prevents it from even considering the real issue in this case. The <u>only</u> time Drew could possibly toll is the time the state courts spent adjudicating his third Rule 3.850 motion, because that is only time in the long course of this case that there was a statute of limitations to toll. But the majority has nothing to say about this period. It does not consider whether Drew was diligent during the time he seeks to toll, but as discussed above, that it is clearly the relevant question to ask

55

about his diligence.  See Brackett v. United States, 270 F.3d 60, 71 (1st Cir. 2001)

(candidate for equitable tolling must "act[] with 'reasonable diligence throughout

the period he seeks to toll.'" (emphasis added) (citation omitted)); Green v. United

States, 260 F.3d 78, 81 (2d Cir. 2001) (same).  The majority also does not consider

that Drew was in state court because the district court instructed him to exhaust his

remedies there, without giving him the opportunity to proceed in 1995 with only

his exhausted claims.[18]  Nor does it consider that the State, having argued in federal

court that Drew would not be procedurally barred from refiling in state court,

reversed its position in the state forum and asserted that Drew's Rule 3.850 motion

---

[18]The Ninth Circuit has held that equitable tolling is appropriate where a district court, in violation of Rose v. Lundy, 455 U.S. 509, 510 (1982), dismisses a partially unexhausted habeas petition outright without providing the petitioner an opportunity to amend or resubmit the petition to present only the exhausted claims, with the result that the post-exhaustion federal petition is untimely under AEDPA.  See Tillema v. Long, 253 F.3d 494, 503 (9th Cir. 2001).  Moreover, as the majority observes in footnote 8, the timeliness problems in this case could have been avoided had the district court retained jurisdiction over Drew's first petition and held that petition in abeyance while the unexhausted claims were pursued in the state court—an approach that a number of circuits have endorsed. See Delaney v. Matesanz, 264 F.3d 7, 14 n.5 (1st Cir. 2001); Zarvela v. Artuz, 254 F.3d 364, 380-82 (2d Cir. 2001) (endorsing retention of jurisdiction during remand over petitions containing both exhausted and unexhausted claims); Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000) (same); Calderon v. United States Dist. Ct., 134 F.3d 981, 988 (9th Cir. 1998) (same); but see Graham v. Johnson, 168 F.3d 762, 778-80 (5th Cir. 1999) (holding that mixed petitions should be dismissed, not held in abeyance).

56

was procedurally barred both as successive and untimely.[19]  And it does not

consider that the state proceedings took longer than AEDPA's newly enacted

limitation period, in part because the State apparently asked for repeated extensions

of time to file while the statute ran.[20]

_____

[19]As the federal magistrate wrote in her report, the State specifically argued that it would not be futile to require Drew to refile in state court "because Florida authorities hold that denials of post-conviction motions on the ground of facial insufficiency are without prejudice to the movant's ability to refile his claims." Magistrate's Report and Recommendation at 6 (citing Flint v. State, 561 So. 2d 1343, 1344 (Fla. Dist. Ct. App. 1990); Long v. State, 555 So. 2d 434, 435 (Fla. Dist. Ct. App. 1990)).  In its brief to this Court, Florida suggests that its about-face in state court is explained by Drew's unanticipated omission of an allegation from his third state motion that the facts on which it was based were previously unknown to him or his attorney and could not have been ascertained by the use of due diligence—an allegation that would have saved his motion from the timeliness requirements of Rule 3.850.  But that is clearly not what the State argued in the federal district court hearing Drew's first petition; it argued that a new state motion would not be procedurally barred because Drew's previous motion had been dismissed on grounds of "facial insufficiency."  Moreover, even if the omission of Drew's allegation could explain the State's new position on the timeliness of his motion, it does not explain why the State changed its mind about whether a renewed motion would be procedurally barred as successive.
    The change in Florida's position made all the difference to the timeliness of Drew's federal petition.  AEDPA was enacted the day after Drew filed his state motion.  If the court had not determined that the motion was procedurally barred as untimely, Drew would have been entitled to statutory tolling of AEDPA's limitation period while the motion was pending in state court.

[20]Drew contends that the progress of the state proceedings was impeded because the State requested and received three extensions of time to file a response to his motion for rehearing.  According to Drew, on September 17, 1996, the trial court directed the State to respond to his motion for rehearing, but as a result of the extensions granted, the State did not file its response until February

The Supreme Court has admonished that procedural rules do not exist to "'trap the unwary pro se prisoner.'" Slack v. McDaniel, 529 U.S. 473, 487 (2000) (quoting Rose v. Lundy, 455 U.S. 509, 520 (1982)). The majority pays lip service to this principle while retroactively imposing an obstacle course so complex (and in which the obstacles shift in mid-course) that the outcome was a foregone conclusion. Having ignored everything possibly relevant to Drew's equitable tolling claim, the majority denies relief on the ground that Drew did not—but in any event, is not entitled to—prove that he complied with a standard that did not exist at the time he allegedly failed to comply with it. I dissent.

---

24, 1997—over five months later.