BYBEE, Circuit Judge,
dissenting:
In one of his brilliant books explaining physics to non-rocket scientists, Brian Greene wrote that “[o]f the many strange things Einstein’s work revealed, the fluidity of time is the hardest to grasp.” Although “everyday experience convinces us that there is an objective concept of time’s passage,” in fact, “[t]he passage of time depends on the particulars ... of the measurer.” Brian Greene, The Hidden Reality: Parallel Universes and the Deep Laws of the Cosmos 66 (2011). As in physics, so in law. At least in equity. In a case that turns on equitable tolling, unlike one involving jurisdictional limitations, we must measure time “with awareness of the fact that specific circumstances, often hard to predict in advance, ... warrant special treatment in an appropriate case.” Holland v. Florida, 560 U.S. 631, 650, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010).
No one disputes that Steven Fue has alleged extraordinary circumstances, beyond his control, that caused him to file his federal habeas petition after the statutory deadline. The California Supreme Court decided his habeas petition six months after he filed it, but the court never told Fue. In fact, when he wrote the court to inquire about his petition, the Clerk told him the court had “no record” of his petition. We have held that this very situation can justify equitable tolling of AEDPA’s statute of limitations if the prisoner has acted with reasonable diligence. Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir.2009).
Yet, with Newtonian precision, the majority holds that Fue did not behave reasonably — and is thus ineligible for equitable tolling — -because he waited 14 months before sending a letter to the California Supreme Court asking about the status of his petition. Maj. Op. at 1117-18. But I fail to see how this was at all unreasonable. The California Supreme Court is required to “promptly” send a copy of its decisions to prisoners. See Cal. R. Ct. 8.387(a)(2), 8.532(a). Fue had not received a copy of any decision, and no statute or rule requires prisoners to seek periodic status updates from the California Supreme Court. Perhaps we should expect prisoners to inquire with the court after an unusually long time has passed with no decision, but 14 months is not an unusually long time for a court — least of all the California Supreme Court — to decide a petition. See Huizar v. Carey, 273 F.3d 1220, 1224 (9th Cir.2001) (21 months “not an unusually long time [for a prisoner] to wait for a court’s decision”).
Why would we require Fue, and other prisoners like him, to pursue a “steady stream of correspondence,” Maj. Op. at 1118-19, with the California Supreme Court to verify that the court has followed its own rules? This is a burden I expect neither the prisoners nor the California Supreme Court will welcome. I respectfully dissent.
I
“The diligence required for equitable tolling purposes is ‘reasonable diligence,’ not ‘maximum feasible diligence.’ ” Holland, 560 U.S. at 653, 130 S.Ct. 2549 (citations and internal quotation marks omitted). Reasonable diligence is not an exacting standard. It simply requires “the effort that a reasonable person might be expected to deliver under his or her particular circumstances.” Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir.2011).
The key “particular circumstances” in this case are as follows: Fue, proceeding without the aid of counsel, filed a habeas *1122 corpus petition with the California Su.preme Court. Unlike superior courts in California, the California Supreme Court has no deadline for deciding habeas petitions.[1] And, unlike habeas proceedings in the superior courts, no rule permits prisoners proceeding before the California Supreme Court to file a request for decision after a certain amount of time has elapsed.[2] The California Supreme Court has, however, obligated itself by rule of court to “promptly” inform prisoners when it renders a decision on their habeas petitions.[3] Habeas petitioners such as Fue may rely on this rule and look for “prompt[]” delivery when the California Supreme Court reaches a decision. Conversely, relying on this rule, they may reasonably assume the court has not reached a decision when the clerk has not “sen[t them] copies showing the filing date.”
We are asked to decide what effort a reasonable person might be expected to undertake in the circumstance in which the court has not sent notice of a decision. In answering this question, we must keep in mind that, “[f]rom a litigant’s perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a [petition].” Miller v. Collins, 305 F.3d 491, 496 (6th Cir.2002). Understanding this, courts have “see[n] no point in obliging a pro se litigant to pester a state court with frequent inquiries as to whether a pending [petition] has been decided, at least until a substantial period of time has elapsed.” Diaz v. Kelly, 515 F.3d 149, 155 (2d Cir.2008).
In my view, a “reasonable person,” knowing that the court will send notice when a decision has been made, might refrain from asking the court about a petition until the petition has remained pending for an unusually long time. How long is unusually long depends, of course, “on the particulars ... of the measurer.” In light of the “particulars” of a pro se prisoner, and perhaps thinking of our own docket, we have charitably allowed that even 21 months is “not an unusually long time to wait for a court’s decision.” Huizar v. Carey, 273 F.3d 1220, 1224 (9th Cir.2001).
In Huizar, a California superior court failed to respond to a state prisoner’s ha-beas petition. Knowing that the superior court must act within 60 days, Cal. R. Ct. 4.551(a)(3)(A), Huizar first inquired about his petition two months after it was filed. When he got no reply he waited 21 months before mailing a second copy to the same court. He waited five months, got no reply, and sent another letter. Huizar went a total of 28 months before learning that his petition had not been received by the superior court and then another four months before filing his federal petition. *1123 Id. at 1222. The district court dismissed his federal petition as untimely. We reversed, however, and instructed the district court to determine on remand if Huizar’s efforts were as he claimed them to be and, if so, to “deem his petition timely and consider it on the merits.” Id. at 1224.
It is very difficult to square Huizar with our decision in this ease. The majority attempts to distinguish Huizar on the ground that the prisoner there engaged in a “steady stream of correspondence” with a non-responsive court. Maj. Op. at 1118— 19. But that misses the point. The point is that Huizar found a delay of 21 months between correspondences followed by a delay of five months to be a “steady stream of correspondence.” Given the misleading answer Fue received from the Clerk of the California Supreme Court in response to his January 31, 2011 inquiry (I discuss the details of the Clerk’s response below), Fue, hardly less than Huizar, sufficiently corresponded with a non-responsive court.
Fue never delayed so much as 21 months. Indeed, in comparison with Hui-zar, he was downright chatty. After 14 months and no word from the California Supreme Court, Fue took the initiative and sent a letter to the Clerk of the California Supreme Court. A prisoner could show his diligence by sending inquiries to a state court each and every day after the case has been submitted. Yet that does not mean that a prisoner who shows something less than hyper diligence in initially reaching out and then following up with a state court has acted unreasonably. In other words, simply because Fue was less proactive than some other prisoner does not mean Fue has acted unreasonably. In light of Fue’s pro se status and the California Supreme Court’s obligation to notify him of its decision, I believe Fue’s actions were entirely consistent with what a reasonable person might be expected to do.
II
Ordinarily, a prisoner must show reasonable diligence not only before but also after receiving delayed notice of a state court’s decision. Miller, 305 F.3d at 496 (considering whether the petitioner “acted promptly after receiving notice of the appellate court’s decision”); see, e.g., Earl v. Fabian, 556 F.3d 717, 724 (8th Cir.2009) (petitioner who filed habeas petition more than eight months after receiving delayed notice failed to pursue rights with diligence). Here, however, Fue need not meet that requirement because he did not receive notice of the California Supreme Court’s decision until after he filed his federal habeas petition.
The majority says Fue received notice when the Clerk of the California Supreme Court informed him, in a letter dated February 3, 2011, “that his habeas case was no longer active.” Maj. Op. at 1116. But the Clerk told him no such thing. The Clerk’s February 3, 2011 letter stated in full: “This will acknowledge receipt of your letter received February 3, 2011, I checked our dockets and found no record of a pending petition for writ of habeas corpus having been filed on or about November 2009.” The misleading implication of the Clerk’s response was that the court never received Fue’s November 2009 petition. Certainly that was how Fue understood it. He “did not know what to think of it,” so he wrote to his appellate lawyer and asked, “What should I do?” The majority understands this letter differently; it thinks the letter informed Fue “that his case [was] no longer active” and that there was therefore “no pending matter[ ] before the court.” Maj. Op. at 1116-17 n. 2. I do not think that is a fair reading of the Clerk’s language quoted above. Even *1124 Fue’s lawyer understood the Clerk’s response to mean the court never received Fue’s petition. He told Fue to “explain to the Court ... that you already sent your petition” and to seek leave to file the petition again.
Taking the letter at face value, Fue instead decided to file his federal habeas petition immediately. In the questionnaire attached to his petition, he wrote that the date of the California Supreme Court’s decision on his habeas petition was “N/A” and the result was “waiting for a response still.” Fue claims — and the State does not dispute — that “the first [he] knew of the denial was when he read the state’s motion to dismiss the petition in this case.” By that time, of course, he had already filed his federal habeas petition, so his need to act with post-notice diligence was moot.
In any event, even if the Clerk’s February 3, 2011 was sufficient to put Fue on notice that his state habeas petition had been denied, Fue still acted with complete diligence after receiving notice of the court’s decision. Based on the facts as he understood them, Fue expected to have three months after receiving notice of the California Supreme Court’s decision to prepare and file his federal habeas petition. (He actually had six months, but his appellate lawyer misinformed him.) Yet once he learned that the California Supreme Court had “no record” of his petition, he filed his federal petition within 32 days. Cf. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.2000) (petitioner who filed federal habeas petition within one month of receiving delayed notice pursued rights with diligence). And Fue was not just sitting on his hands; those 32 days included the time he took to write his appellate lawyer for advice on how to proceed and then to wait for his lawyer’s response. These actions clearly show that Fue made “the effort that a reasonable person might be expected to deliver under his or her particular circumstances.” Busby, 661 F.3d at 1015.
Ill
The majority bases its holding on what other circuits have held in “similar cases.” Maj. Op. at 1117. But the majority does not effectively deal with the cases most similar to ours, and the unreasonable-delay cases the majority relies on are either unpersuasive or not similar at all.
The majority divides the cases into two groups. First are the cases in which the petitioner inquired about a petition after less than 10 months; in these cases, the courts found, the petitioners acted with sufficient diligence. Id. at 1117. Then are the cases in which the petitioner waited sixteen months or more; those petitioners were deemed not to have acted with sufficient diligence. Id. The majority reasons that because Fue’s 14 months is “closer to the majority of cases finding a lack of reasonable diligence,” Fue was therefore not reasonably diligent. Id. In other words, the majority effectively argues, because 14 months is closer to 16 months than it is to 10 months, Fue’s petition cannot be reviewed.
While I cannot argue with the mathematical precision of the majority’s approach, this certainly draws a fine line. See Busby, 661 F.3d at 1015 (“Equitable tolling is not the arena of bright-lines and dates certain[.]”). Under this reasoning, if Fue had only inquired just six weeks earlier, his delay of 12 and a half months would have been closer to 10 months than to 16; perhaps then the majority would say he was sufficiently diligent. But the majority’s line-drawing is an exercise in rule making, not an exercise in equity. Although the majority does not create a hard deadline — such as might be found in a statute of limitations — it has created an *1125 asymptote, a limit that approaches a finite number, around 13 months.
The majority draws the line finer still by its treatment of the Fifth Circuit’s decision in Hardy v. Quarterman, 577 F.3d 596 (5th Cir.2009). The court there held that a prisoner acted reasonably in waiting 11 months before contacting the Texas Court of Criminal Appeals about his petition. Id. at 599. Two circumstances were particularly relevant to the court: first, Hardy’s pro se status, and second, the fact that the court had a legal duty to notify him when it issued a decision. Id.; see also id. at 598 (noting that, under Texas rules of appellate procedure, “[t]he [Texas Court of Criminal Appeals] is ... legally obligated to notify a petitioner once a decision has been rendered on his habeas petition”). Looking to its own prior decisions, the court reasoned that “[Hardy’s] eleven-month wait is much more analogous to the eight months the petitioner in [one case] allowed to elapse than the two and a half-year wait in [another case].” Id. at 599. The court also cited two of the cases cited by the majority here — Diaz v. Kelly, 515 F.3d 149, 155 (2d Cir.2008), and Miller v. Collins, 305 F.3d 491, 495-96 (6th Cir. 2002) — and reasoned that “the timing of Hardy’s inquiry is not significantly different from time periods found to be reasonable by other circuits.” Id.
Our case is quite similar to Hardy. Fue, like Hardy, was representing himself in his habeas proceedings before the California Supreme Court. The California Supreme Court, like the Texas Court of Criminal Appeals, is legally required to notify prisoners “promptly” when it has rendered a decision on their habeas petitions. See Cal. R. Ct. 8.387(a)(2), 8.532(a). And the timing of Fue’s inquiry is not significantly different from the time period found reasonable in Hardy, despite the majority’s assertion that a fourteen-month delay is “considerably longer” than eleven months. Maj. Op. at 1120.
Another similar case the majority fails to appreciate is Knight v. Schofield, 292 F.3d 709 (11th Cir.2002). In that case, the court held that a prisoner’s delay of 18 months before inquiring about the status of his petition was reasonable. If Knight’s 18-month delay was reasonable, Fue’s 14-month delay should be reasonable too.[4]
Of the three cases cited by the majority that found a prisoner’s delay unreasonable, two involved much more delay than 14 months (one was 21 months, the other 24 months), and both of those cases involved a prisoner who was represented by counsel. See LaCava v. Kyler, 398 F.3d 271, 276 (3d Cir.2005) (noting that “LaCava was not entitled to personal notice of the Pennsylvania Supreme Court’s order” because he “was represented by counsel during his *1126 state collateral proceedings”); Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir.2002) (declining to grant equitable tolling because “[t]he petition at issue in this case remained submitted but unfiled for almost two years, at least in part because counsel failed adequately to investigate the status of the case”). These decisions are not similar to ours, so we should not follow them.
That leaves just one case: Drew v. Department of Corrections, 297 F.3d 1278 (11th Cir.2002), which determined that a prisoner’s 16-month delay before contacting the court constituted a lack of reasonable diligence. Notably, however, Drew never held that a 16-month delay is unreasonable as a matter of law; it held that it was not clear error for the district court to determine that Drew’s 16-month delay was unreasonable. Id. at 1289-90. Indeed, in the face of statistics showing that Drew’s 16-month wait was not far off of the average time courts take to rule on petitions like his, the Drew majority refused to consider the evidence. To consider the evidence, the majority reasoned, would amount to “de novo fact-finding” and would “eviscerate[ ]” the trial court’s central role. Id. at 1289-90 & n. 4; see also id. at 1289 (“Even if there were some reasonable debate as to Drew’s diligence, ... the dissent offers no reason to find clear error.... ”). Given that the majority here reviews the district court’s diligence determination de novo, Maj. Op. at 1116-17, it makes little sense to hold that Fue’s 14-month delay was unreasonable because it was “close” to the 16-month delay the Drew majority deemed unreasonable under a highly deferential standard of review.
Even if we set aside the fact that Drew was decided under clear-error review, the decision is unpersuasive. I see no basis articulated in the Drew majority’s opinion for its “finding ... that a sixteen month ‘delay’ before contacting the court about the status of the petition constitutes a lack of diligence.” Id. at 1301 (Barkett, J., dissenting). The Drew majority’s opinion, much like the majority’s opinion here, appears to be based on an instinctive sense of what seems like a long time; it does not appear to be based on evidence of what any reasonable pro se prisoner would know or do under the circumstances.
If Drew’s 16-month delay was indeed close to the average amount of time a court takes to decide petitions like his, it would seem to me that Drew acted well within the bounds of reasonable diligence. See id. at 1300-01. Ultimately, however, such proof is unnecessary. Recognizing that it may be nearly impossible for a pro se prisoner to know how long it may take a court to decide a petition, Miller, 305 F.3d at 496, a prisoner should be able to trust that the court will send notice when a decision has been made — at least until the petition has remained pending for an unusually long time. And neither 16 months nor 14 months is an unusually long time. Huizar, 273 F.3d at 1224.[5]
At bottom, the only case cited by the majority that comes even remotely close to ours (Drew) involved a longer delay, was decided under a different and highly deferential standard of review, and refused to consider evidence that the delay involved there in fact was reasonable. We should not feel bound by it.
*1127 Since it is only the extraordinary case in which the state court fails to send notice of a decision, a rule requiring prisoners to seek early and frequent updates would be a waste of time for almost all prisoners, would be a heavy administrative burden for state courts, and would only minimally serve the interest of preventing stale federal habeas petitions. Fue affirmatively inquired with the California Supreme Court about the status of his petition after 14 months, he sent a letter to his appellate attorney, and he then promptly filed his federal habeas petition. In doing all this, Fue acted just as we should expect a reasonable person in his shoes to act. I would give him his day in federal court. Accordingly, I dissent.

.Superior courts "must rule on a petition for writ of habeas corpus within 60 days after the petition is filed.” Cal. R. Ct. 4.551(a)(3)(A); see also Cal. R. Ct. 4.550(a) (providing that Rule 4.551 “applies to habeas corpus proceedings in the superior court”). Although the California Supreme Court has no analogous deadline for deciding habeas petitions, it does have a deadline for deciding petitions for review of lower court decisions. See Cal. R. Ct. 8.512(b) (petitions for review filed with the California Supreme Court are "deemed denied” if the court does not rule on the petition or grant an extension within 60 days).

. See Cal. R. Ct. 4.551(a)(3)(B) (“If the [superior] court fails to rule on the petition within 60 days of its filing, the petitioner may file a notice and request for ruling.”).

. See Cal. R. Ct. 8.532(a) ("The Supreme Court clerk must promptly file all opinions and orders issued by the court and promptly send copies showing the filing date to the parties....”); see also Cal. R. Ct. 8.387(a)(2) (providing that Rule 8.532(a) governs the filing of the California Supreme Court’s decisions in habeas corpus proceedings).

. Soon after Knight was decided, the Eleventh Circuit distinguished it on the ground that a court clerk told Knight when he - filed his petition that he would be notified as soon as a decision was issued. Drew v. Dep’t of Corr., 297 F.3d 1278, 1288 n. 3 (11th Cir.2002). But I believe the Drew majority was wrong to distinguish Knight on this ground. The court in Drew treated equitable tolling as though it required equitable estoppel. See id. ("[M]ost importantly, [Drew] received no assurances from the Clerk on which to rely.”). But equitable tolling does not; it only requires reasonable diligence.
Fue, like Drew, “had every reason to expect that the court would notify him once it ruled on his petition; every litigant knows that the court is supposed to inform the parties when a result has been reached.” Id. at 1300 (Barkett, J., dissenting). Indeed, as explained above, the California Supreme Court’s rules obligate it to notify prisoners promptly when it rules on their habeas petitions. To suggest “that it would make all the difference to [Fuel’s case had the Clerk of the [California Supreme Court] told him, at the time he filed his petition, that he would be notified of the result [would be] disingenuous.” Id.

. Indeed, it has taken our court a good deal longer than 14 months to decide Fue's case. The wheels of justice often turn slowly, and it is not unreasonable for a pro se prisoner to be aware of that fact and act accordingly.